**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**ANNIE CRAWFORD,**
**on behalf of herself and all**
**others similarly situated,**

**Plaintiff,**

**v.**

**TALK AMERICA, INC.,**
**a Pennsylvania corporation,**

**Defendant.**                                                     **No. 05-CV-0180-DRH**

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

### I. Introduction and Procedural Background

Now before the Court is Defendant Talk America, Inc.'s motion to compel arbitration and stay action pursuant to the Federal Arbitration Act, or, alternatively, to stay the action in favor of the Primary Jurisdiction of the Federal Communications Commission (Doc. 22). Specifically, Talk America, Inc. moves the Court to compel arbitration of all claims in this matter. Crawford opposes the motion (Doc. 49). Based on the following, the Court grants Talk America, Inc.'s motion and stays this matter pending arbitration.

On March 11, 2005, Annie Crawford, on behalf of herself and all others similarly situated, filed suit against Talk America, Inc. ("Talk America"), a

telecommunications carrier offering local, long distance and dial up internet services to residential and small business customers in twenty-five states nationwide, for unjust and unreasonable rate overcharges in violation of the Communications Act § 201(b), **47 U.S.C. § 201(b)** (Doc. 1).[1] Crawford challenges the lawfulness of Talk America's "TSR Administrative Fee," a line item that appears on its customers' monthly bills. Crawford alleges that Talk America "confuses . . . consumers as to the true nature of the TSR Administrative Fee by, among other things, listing the TSR Administrative Fee as a line item amongst government fees, surcharges and taxes...." (Doc. 1, ¶ 15).

On May 16, 2005, Talk America filed a motion to compel arbitration and stay action pursuant to the Federal Arbitration Act, or alternatively, to stay the action in favor of the primary jurisdiction of the Federal Communications Commission (Doc. 22). On June 6, 2005, the Court exercised its discretion pursuant to **LOCAL RULE 7.1(g)** and granted Talk America's motion to stay the case and compelled arbitration (Doc. 30).[2] The next day, Crawford moved to vacate the Court's Order (Doc. 31). On June 8, 2005, the Court vacated its June 6, 2005 Order and allowed Crawford up to and including June 13, 2005 to respond to the motion to stay and compel arbitration (Doc. 35). Instead of filing a response to the motion to stay and

---

[1]Crawford seeks to represent the following class: All current and former Talk America customers who, on or after March 10, 2003, paid a TSR Administrative Fee assessed by Talk America.

[2]**LOCAL RULE 7.1(g)** provides in part: "A party opposing such motion shall have **ten (10) days** after the service of the motion to file a written response. Failure to file a timely response to a motion may, in the court's discretion, be considered an admission of the merits of the motion."

compel arbitration, Crawford filed a motion for leave to serve discovery and extend time to respond to Defendant's motion (Doc. 37). Talk America filed its opposition to the motion on June 30, 2005 (Doc. 43). On July 11, 2005, Crawford moved for an extension of time to file a reply (Doc. 44) which the Court granted and allowed Crawford up to an including July 15, 2005 to reply (Doc. 45). Crawford filed her reply on July 15, 2005 (Doc. 46). On August 30, 2005, the Court denied's Crawford's request. Thereafter, the parties filed briefs on the pending motion to compel (Docs. 49, 50 & 51).

Talk America argues that this Court should compel arbitration and stay this case as Crawford agreed to arbitrate all disputes arising out of the telecommunications services she enrolled in or used provided by Talk America and further agreed under the agreement ("CSA") not to arbitrate any claims as a class action. Crawford opposes the motion contending that since she never received or has been able to access the CSA, she did not assent to the CSA's arbitration provision and cannot be compelled to arbitrate her claim.

## II. Analysis

The Federal Arbitration Act ("FAA") was originally enacted "… to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." ***Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)**. "Its primary substantive

provision states that '[a] written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.'" ***Id.* at 24-25 (quoting 9 U.S.C. § 2)**. Section 3 of the FAA provides for stays of proceedings where the issue therein is referable to arbitration, and § 4 provides for the court's entering an order compelling arbitration where a party has failed to arbitrate under the agreement.  **9 U.S.C. § § 3, 4**.

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." ***Moses H Cone Memorial Hosp. v. Mecury Const. Corp.*, 460 U.S. 1, 24-25 (1983)**. While it is established that FAA policy favors the enforcement of valid arbitration agreements, Crawford cannot be compelled to arbitrate unless she has entered into a valid contract waiving her right to a judicial forum.  The Court turns now to address this issue.

On February 25, 2004, Crawford signed up for telephone service with Talk America.  The following is a conversation regarding verification of Crawford's order for service with Talk America between Crawford and an ACS Verifier:

**ACS Verifier:**             That 9979-4995

**Talk America Operator:** That's right. Ms. Crawford. Ms. Crawford, I would like to thank you for using Talk America, you yourself have a great day okay ma'am.

**Crawford:** Okay.

**Talk America Operator:** Hold on for the verifier.

**ACS Verifier:** Hello.

**Crawford:** I'm here.

**ACS Verifier:** My name is Wayne and I'm with ACS a independent verification company. The purpose of this call is to confirm your order with Talk America, and this call is being recorded. Today's date is February 25th of 2004 and you have requested to have the following phone number switched to Talk America, 618-332-3417. Is that correct?

**Crawford:** Yes.

**ACS Verifier:** You are over 18 years of age and the person of record with authority to make decision on you phone services, correct?

**Crawford:** Yes.

**ACS Verifier:** You are giving your approval to change your local services to Talk America, correct?

**Crawford:** (inaudible)

**ACS Verifier:** And that was a yes?

**Crawford:** Yes.

**ACS Verifier:** And you are giving your approval to change your regional toll sometimes called your intra-lata services to Talk America? Correct?

**Crawford:** Yes.

**ACS Verifier:** And you are giving approval to change your interstate, intrastate, inter-lata and international telephone services to Talk America, correct?

**Crawford:** (inaudible)

**ACS Verifier:** Is that a yes?

**Crawford:** Yes. Yes I believe so.

**ACS Verifier:** Okay for identification purposes may I please have your date of birth?

**Crawford:** 5/18/49.

**ACS Verifier:** Okay and your first name is A N N I E.

**Crawford:** Yes.

**ACS Verifier:** And your last name is C R A W F O R D, is that correct?

**Crawford:** Yes.

**ACS Verifier:** Your service will be switched within 4 to 7 days from your current provider to Talk America, Incorporated and based on your current information the price of your monthly services will be $18.95 and including taxes and surcharges your bill will be approximately $31.14. For complete information about your services you may visit Talk.com or call 1-800-291-9699. This completes the verifications process and confirms your order with Talk America. Thank you for your time. You have a wonderful day.

**Crawford:** Okay.

**ACS Verifier:**                     Bye Bye.

Thereafter, Talk America sent Crawford a notice dated February 27, 2004 (the "Welcome Letter") informing her that she could view her bill on line and review the service terms and conditions of her Talk America service at www.talk.com. (Doc. 24, Exhibit B).[3]  The Notice also informed Crawford that she could call, email or write a letter to Talk America if she had any questions. (Doc. 24, Exhibit B).

The relevant clauses in the CSA are prefaced or set forth in bold and capitalized text.  Under the "Terms and Conditions," the CSA provides as follows:

> **BY ENROLLING IN, USING OR PAYING FOR THE SERVICES, YOU AGREE TO THE PRICES,, CHARGES, TERMS AND CONDITIONS IN THIS AGREEMENT.  IF YOU DO NOT AGREE TO THESE PRICES, CHARGES, TERMS AND CONDITIONS, DO NOT USE THE SERVICES, AND CANCEL THE SERVICES IMMEDIATELY BY CALLING TALK AT 1-800-291-9699 FOR FURTHER DIRECTIONS**.

(Doc. 24, Exhibit A, Heading).

* * *

---

[3]The February 27, 2004 Notice provides in part:
Now, you can go online to view your bill and real time usage, update your account information, make payments, review service terms and conditions and get answers to many of your questions.  Go to www.talk.com and enter your account number and temporary password in the Member Login area.
Any questions?
Go online at: www.talk.com
Call us at: 800-291-9699
Email us at: cs@talk.com
Mailing address:
2704 Alternate19 North
Palm Harbor, FL 34683

(Doc. 24, Exhibit B).

**IT IS IMPORTANT THAT YOU READ THIS ENTIRE SECTION CAREFULLY. THIS SECTION PROVIDES FOR RESOLUTION OF DISPUTES THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY OR THROUGH A CLASS ACTION**.

(Doc. 24, Exhibit A, § 6).

Specifically, the CSA provides that "[a]ll ... disputes [excepting those qualifying for small claims court] arising out of or related to this Agreement (whether based on contract, tort, statute, fraud, misrepresentation or any other legal or equitable theory) must be resolved by final and binding arbitration" (Doc. 24, Exhibit A, § 6(a)). The CSA also states: "No dispute may be joined with another lawsuit, or in an arbitration with a dispute or any other person, or resolved on a class-wide basis." (Doc. 24, Exhibit A, § 6(a)). The CSA further reads: "Before you take a dispute to arbitration ..., you must first contact our customer account representatives at the customer service number on your Talk bill for the Services, or write to us at ..., and give us an opportunity to resolve the dispute." (Doc. 24, Exhibit A, § 6(b)). Here, Talk America contends that the CSA requires arbitration. Crawford maintains that since she never received or accessed the CSA from Talk America, she did not assent to the CSA's arbitration provisions and cannot be compelled to arbitrate her claims. The Court does not agree with Crawford.

The Court finds that **Boomer v. AT&T Corp., 309 F.3d 404 (7th Cir. 2002)**, instructive, if not controlling. In **Boomer,** the Seventh Circuit examined the

terms of a virtually identical CSA. The CSA in **Boomer** provided "**BY ENROLLING IN, USING, OR PAYING FOR THE SERVICES, YOU AGREE TO THE PRICES, CHARGES, TERMS AND CONDITIONS IN THIS AGREEMENT.**" *Id.* **at 414**. Furthermore, the CSA in **Boomer** stated that "[a]ll … disputes arising out of or related to this Agreement (whether based in contract, tort statute, fraud, misrepresentation or any other legal or equitable theory) must be resolved by final and binding arbitration" and stated that "NO DISPUTE MAY BE … RESOLVED ON A CLASS-WIDE BASIS." *Id.* **at 410**. The Seventh Circuit held:

> In sum, the CSA Mailing constituted an offer and Boomer's continued use of AT&T's services constituted an acceptance. Consideration supported each party's promises and Boomer failed to present any evidence of fraud. Accordingly, the CSA constituted a contract and as such established the terms and conditions governing AT&T's relationship with Boomer, one of which was an arbitration clause.

*Id.* **at 416-17**. The Seventh Circuit found that there was consideration for the CSA because "in exchange for his agreement to arbitrate, AT&T agreed to provide continued telephone services." *Id.* **at 416.**

The facts of this case and **Boomer** are identical except that here the consumer (Crawford) has to go on line or make a phone call to learn the terms of the CSA. The Court finds this fact legally indistinguishable. Crawford enrolled in the Talk America's phone service and began using Talk America as her telephone provider in February 2004. Crawford acknowledges that she received Talk America's February 27, 2004 Notice advising her that she could "review service terms and conditions" at www.talk.com or, that she could call Talk America to learn of the

specific terms and conditions of such service. Lastly, a third-party verification company verbally informed Crawford that "[f]or complete information about your services you may visit Talk.Com or call 1-800-291-9699" when she initially agreed to Talk America's telephone service. Counsel for Plaintiff relies heavily in arguing for Plaintiff on a theory that requiring the Plaintiff to own a computer and learn how to navigate the internet makes the "agreement" to the CSA a nullity. Ignoring the fact of signing up for phone service and the availability of the toll free phone number to request the information makes such an argument one without weight or effect.

Crawford's telephone service with Talk America had terms and conditions. It was not free or without restrictions. Crawford had the option to cancel her service. By using the service, Crawford indicated her willingness to contract on the terms of the CSA. As in **Boomer**, the CSA between Crawford and Talk America "constituted an offer" and Crawford's continued use of Talk America's services constituted acceptance of the CSA.

Furthermore, the Seventh Circuit in **ProCD v. Zeidenberg, 86 F.3d 1447, 1452 (7th Cir. 1996),** in analogous circumstances found a valid contract was formed. **("A vendor, as master of the offer, may invite acceptance by conduct, and may propose limitations on the kind of conduct that constitutes acceptance. A buyer may accept by performing the acts the vendor proposes to treat as acceptance.")**. In **ProCD,** the Seventh Circuit recognized the following scenario:

> [C]onsider the purchase of an airline ticket. The traveler calls the carrier or an agent, is quoted a price, reserves a seat, pays and gets a

ticket, in that order. The ticket contains elaborate terms, which the traveler can reject by canceling the reservation. To use the ticket is to accept the terms, even terms that in retrospect are disadvantageous.

***Id.* at 1451; *see also Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997) ("Payment preceding the revelation of full terms is common ...")**. Pursuant to the terms of the CSA, the Court finds that Crawford agreed to arbitrate her claim. Because the Court finds Crawford must arbitrate her claims, the Court need not address the parties' alternative arguments regarding the Doctrine of Primary Jurisdiction.

### III.  Conclusion

Accordingly, the Court **GRANTS** Talk America's motion to compel arbitration and stay action pursuant to the Federal Arbitration Act (Doc. 49). The Court **REFERS** this matter to arbitration and **STAYS** all proceedings pending the outcome of arbitration.

**IT IS SO ORDERED.**

Signed this 6th day of October, 2005.

/s/         David RHerndon
**United States District Judge**